[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 21, 2010
JOHN LEY
CLERK

_____

No. 09-16134

_____

D. C. Docket No. 08-01599-CV-2-KOB

TRACI L. JONES,

Plaintiff-Appellant,

versus

FREEDOM RAIN, TLC,
d/b/a The Lovelady Center, and
BRENDA SPAHN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 21, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Traci L. Jones ("Jones") filed this lawsuit against Defendants-Appellees Freedom Rain, TLC d/b/a The Lovelady Center ("TLC") and Brenda Spahn ("Spahn"), her former employer, alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime compensation. The district court granted summary judgment in favor of Defendants, finding that, as a matter of law, the FLSA's individual and enterprise coverage provisions did not apply to TLC, and that Spahn's liability was only derivative of TLC's liability. As there are disputed issues of material fact as to whether TLC is subject to the FLSA's enterprise coverage provision due to the amount of its annual gross volume of sales or business, we reverse the judgment of the district court granting summary judgment to Defendants and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant TLC is a non-profit corporation that, during the relevant time period, owned The Lovelady Center, a residential treatment and recovery program for homeless women who were either recently released from prison, victims of domestic violence, or substance abusers. In addition to operating the rehabilitation center, TLC also operated several other businesses, including an employment agency, diner, daycare, beauty shop, and store. TLC employed 30 to

50 workers, including Plaintiff Jones, who was a Client Representative for TLC from June 2006 to August 2007. Jones reported to Defendant Spahn, who was the founder and Executive Director of TLC. During Jones' employment with TLC, she maintains that she typically worked over 45 hours-per-week, but was not paid time-and-a-half overtime pay for hours worked in excess of 40 hours-per-week.

On September 2, 2008, Jones filed a lawsuit to recover her unpaid overtime compensation. In a one-count Complaint, Jones alleged that Defendants willfully violated the overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to compensate her for all hours worked in excess of 40 hours-per-week during her employment with TLC. In their Answer, Defendants, among other things, denied that they were subject to the FLSA. After discovery was conducted, Defendants filed a Motion for Summary Judgment alleging that there were no genuine issues as to any material facts regarding whether Defendants were subject to the overtime provisions of the FLSA. On October 26, 2009, the district court granted Defendants' Motion for Summary Judgment, finding that, as a matter of law: (1) the FLSA's individual coverage provision did not apply to Defendants because Jones did not show that she was engaged in interstate commerce or in the production of goods for interstate commerce; (2) the FLSA's enterprise coverage provision did not apply to Defendants because, even if Jones could show that TLC

3

employees engaged in interstate commerce, she did not show that TLC's gross business income exceeded $500,000; and (3) Spahn's liability was only derivative of TLC's liability, of which there was none. On November 25, 2009, Jones filed a Notice of Appeal.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo,* considering all the evidence and factual inferences in the light most favorable to the non-moving party. *See Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 956 (11th Cir. 2009). Under Fed.R.Civ.P. 56(c), a motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

On appeal, Jones argues the district court erred in finding that the FLSA's enterprise coverage provision did not apply to Defendants. Under the FLSA, enterprise coverage only applies to "an enterprise engaged in commerce or in the production of goods for commerce," which means an enterprise that:

(i) has employees engaged in commerce or in the production of goods

4

for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

29 U.S.C. § 207(a)(1); 29 U.S.C. § 203(s)(1)(A). Thus, for enterprise coverage to apply, a business must have: (1) employees engaged in commerce or handling goods moved in commerce, and (2) annual gross volume of sales or business done of at least $500,000. In the instant case, Jones presented evidence regarding the first requirement by showing that TLC's employees engaged in interstate commerce by operating an employment agency, diner, daycare, beauty shop, and store. However, the district court found that Jones did not satisfy the second requirement as she failed to present evidence showing that TLC had annual gross volume of sales or business done of at least $500,000 for the pertinent years. As such, the district court found that the FLSA's enterprise coverage provision did not apply to Defendants.

We reviewed the evidence before the district court *de novo* to determine if genuine issues of material fact existed as to whether TLC had annual gross volume of sales or business done of at least $500,000 in 2006 and 2007. According to 29 C.F.R. § 779.259,

5

[t]he **annual gross volume of sales made or business done** of an enterprise consists of its gross receipts from all types of sales made and business done during a 12-month period. The gross volume of sales made or business done means the gross dollar volume (not limited to income) derived from all sales and business transactions including, for example, gross receipts from service, credit, or other similar charges. . . . The gross volume of sales or business includes the receipts from sales made or business done by the retail or service establishments of the enterprise as well as the sales made or business done by any other establishments of the enterprise, exclusive of the internal transactions between them.

(emphasis added). Thus, for purposes of the FLSA, "annual gross volume of sales or business done" consists of gross receipts from all types of sales, including sales made by any establishments of the enterprise. By definition, the gross volume of sales is not limited to income.

As to 2006 annual gross volume of sales or business done, Jones submitted TLC's 2007 IRS Form 990 to show that TLC's annual gross volume of sales or business done in 2006 exceeded $500,000. Line 17 of Form 990's Support Schedule states that TLC had "gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to the organization's charitable, etc., purpose" of $868,197 in 2006, well beyond the $500,000 threshold. Defendants argue that this document was unauthenticated and thus should not be considered. TLC, however, produced this document, Bates Numbered 0060-0072, to Jones in its response to Jones' interrogatories, stating

6

that it elected "pursuant to FRCP 33(d) to produce business records" in lieu of answering some of the interrogatories directly. Def's Resp. to Pl.'s Interrog. Doc. 42, Ex. L. Subsequently, in its responses to Jones' requests for admissions, both Defendants admitted that "Bates Numbered Documents 1-1,260 are photocopies of Freedom Rain's [TLC's] documents." Def's Resp. to Pl.'s Req. for Admis. Doc. 42, Ex. Q, No. 21 and Ex. F, No. 30. Thus, Defendants' argument is without merit as this document was authenticated. *See* 29A Am.Jur.2d *Evidence* § 1053 (2010). This document raises disputed issues of fact as to whether TLC's annual gross volume of sales or business done in 2006 exceeded the $500,000 threshold.

As to 2007 annual gross volume of sales or business done, Jones submitted TLC's 2007 Profit and Loss Statement to show that TLC's annual gross volume of sales or business done in 2007 exceeded $500,000. The Profit and Loss Statement shows the following "income": $66,337.03 from TLC's employment agency business ("TLC Personnel"); $180.00 from TLC's daycare business ("Kid zone Income"); $163,101.74 from TLC's work release program ("PDL"); $203,195.75 from rent ("Program Fees"); $9,670.00 from the State of Alabama; $37,415 from the TASC program ("Tasc - Another Chance" and "Tasc - CCP"); $25.00 from transportation fees; and $9,467.90 from vending. The total of these income figures is $489,392.42, which is below the $500,000 threshold. Jones, however,

argues that the stated amount of income from TLC's employment agency business, $66,337.03, is grossly underestimated. Jones estimated that if 65% of TLC's approximately 200 clients worked 2,000 hours grossing $8.00 per hour, then the amount of income from TLC's employment agency business would be $2,080,000, which would make the 2007 annual gross volume of sales or business done far exceed the $500,000 enterprise coverage threshold. Defendants again argue that this document was unauthenticated and thus should not be considered, and that Jones' estimate of income from TLC's employment agency business is pure speculation.

As stated above, Defendants' argument that the document is unauthenticated is without merit. TLC produced this document, Bates Numbered 0205-0207, to Jones in its response to Jones' interrogatories, stating that it elected "pursuant to FRCP 33(d) to produce business records" in lieu of answering some of the interrogatories directly. Def's Resp. to Pl.'s Interrog. Doc. 42, Ex. L. Subsequently, in its responses to Jones' requests for admissions, both Defendants admitted that "Bates Numbered Documents 1-1,260 are photocopies of Freedom Rain's [TLC's] documents." Def's Resp. to Pl.'s Req. for Admis. Doc. 42, Ex. Q, No. 21 and Ex. F, No. 30. Thus, this document was authenticated. *See* 29A Am.Jur.2d *Evidence* § 1053 (2010). Further, although Defendants state Jones'

estimate of income from TLC's employment agency business is speculation, they presented no evidence to refute the estimate. Jones' estimate may not be precise and may not persuade a jury, but that does not make it pure speculation. Her estimate was based upon Defendants' responses to discovery as well as her personal knowledge gained as a client representative for TLC. From Jones' calculation, a jury could infer that the stated amount of income from TLC's employment agency business is underestimated. Even if the stated amount of income is underestimated by only $10,607.58, and not $2,013,662.97 as Jones estimated, then Defendants' annual gross volume of sales or business done would meet the $500,000 enterprise coverage threshold. At the very least, Jones raised disputed issues of fact as to whether TLC's annual gross volume of sales or business done in 2007 exceeded the $500,000 threshold.

Summary judgment is proper only when there are no genuine issues of material fact. Viewing the evidence and any justifiable inferences in Jones' favor, a reasonable person could conclude that there are disputed issues of material fact as to whether TLC's annual gross volume of sales or business exceeded $500,000 in 2006 and 2007, which would subject TLC to the FLSA's enterprise coverage provision. Consequently, the district court's reasoning in this regard is insufficient to sustain summary judgment. Finding these genuine issues of

9

material fact that must be resolved by a jury, we reverse the district court's grant of summary judgment to Defendants.

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment to Defendants and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.